## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

CEDEAL HARPER,

                     Plaintiff,

v.                                         CIVIL ACTION NO.   2:14-cv-07529

C.O. JOSEPH BARBAGALLO, et al.,

                     Defendants.

### MEMORANDUM OPINION AND ORDER

Pending are two motions to dismiss, one filed by Defendants Joseph Barbagallo and Shawn Ramsey, (ECF No. 62), and the other by Defendant David Ballard, (ECF No. 64).   For the reasons that follow, the motion by Ramsey and Barbagallo is **DENIED**.   The motion by Ballard is **GRANTED IN PART** and **DENIED IN PART**.

### *I.*     *BACKGROUND*

The following facts are derived from the Second Amended Complaint.   As it must, the Court accepts these facts as true for the purpose of deciding the motions to dismiss.

Plaintiff Cedeal Harper is an inmate incarcerated at Mount Olive Correctional Complex ("MOCC").   The events described below occurred while Plaintiff was housed in administrative segregation within the Quilliams II unit of MOCC.

While in administrative segregation, Plaintiff is generally permitted one hour of out-of-cell exercise per day.   (Second Am. Comp. ¶ 12.)   On January 18, 2014, however, Ramsey and Barbagallo, correctional officers employed at MOCC (collectively "the Officers), denied Plaintiff

exercise for refusing to shave.   (*Id.* ¶ 14.)   At the time, Ramsey and Barbagallo were processing other inmates within Plaintiff's pod for out-of-cell exercise.   (*Id.*)   Locked in his one-man cell, Plaintiff requested to speak with a supervisor.   (*Id.* ¶ 15.)   Ramsey denied the request and continued his work.   (*Id.*)    Upon returning to the pod after escorting an inmate to the recreational yard, Ramsey threatened Plaintiff with the use of pepper spray if he did not "sit down and shut up."   (*Id.* ¶ 17.)   Plaintiff responded by kicking his door, yelling "don't just threaten me[,] just do what you got to do," and   covering his "bean hole," or food slot, with a jacket for fear of being sprayed. (*Id.* at ¶ 18.)   Ramsey and Barbagallo apparently ignored him, however, and completed the processing of inmates for exercise without further incident.[1]   (*Id.* ¶ 20.)

After completing their escort of inmates to the recreational area, Ramsey and Barbagallo returned to the pod and began to engage in a verbal altercation with Plaintiff through his locked cell door.   (*Id.* ¶ 22.)   By this time, Plaintiff was no longer kicking his cell door.   (*Id.* ¶ 24.)   The argument between officers and inmate continued, and in response to Plaintiff calling him a name, Ramsey said "to hell with this shit," and opened Plaintiff's food slot.   Without warning, Barbagallo then deployed pepper spray through the food slot and into Plaintiff's cell.   (*Id.* ¶ 22.) Plaintiff fell over his cell toilet, injuring his legs, face, and head, and sustained eye damage, sinus problems, burning pain, and discomfort as a result of being sprayed.   (*Id.* ¶ 28.)   Plaintiff alleges that he was neither kicking his cell door nor posing any threat to the safety of himself, other inmates, or MOCC staff when Barbagallo sprayed him.   (*Id.* ¶¶ 23–24.)

---

[1] Barbagallo would later issue a formal disciplinary citation to Plaintiff for kicking his cell door. (Second Am. Compl. ¶ 27.)

Plaintiff brings suit against Ramsey and Barbagallo as well as David Ballard, the Warden of MOCC (collectively, "Defendants").   The Second Amended Complaint contains three counts against Defendants: assault and battery (Count I), intentional infliction of emotional distress (Count II), and a claim under 42 U.S.C. § 1983 for violations of Sections 1, 5, and 10 of the West Virginia Constitution and the Eighth and Fourteenth Amendments of the United States Constitution (Count III).[2]

Embedded in Plaintiff's § 1983 claim is a claim for supervisory liability against Ballard. In addition to the factual allegations just recited, Plaintiff claims that as early as August 18, 2012, Ballard promulgated or endorsed a policy within the Quilliams unit that permits MOCC officers to forcefully respond to inmate disturbances without first making reasonable efforts to temper. Plaintiff also alleges that Ballard routinely declares martial law on the Quilliams unit without legal authorization.   (*Id.* ¶¶ 36–37.)   The Second Amended Complaint states: "MOCC's policy of martial law and practice of permitting any level of force to be used without efforts to temper creates a pervasive and unreasonable risk that inmates, including Mr. Harper, will be maliciously and sadistically harmed by the use of force for the purpose of punishment and without regard to the need for force."   (*Id.* ¶ 42.)

Defendants move to dismiss the Second Amended Complaint on various grounds discussed below.   Their motions have been fully briefed and are ready for resolution.

## II.    LEGAL STANDARD

---

[2] On Counts I and II, Plaintiff apparently seeks to impose liability on Ballard under the theory of *respondeat superior*.

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint.   Fed. R. Civ. P. 12(b)(6).   While "the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1202 (3d ed. 2004)).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.   While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case.   The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly,* 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" . . . ).   Rule 8 . . . does not unlock the doors of discovery for a Plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.   *Id.* at 556.

4

556 U.S. at 678–79.   A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged."   *Id.*   In other words, the factual allegations (taken as true) must "permit the court to infer more than the mere possibility of misconduct."   *Id.*   A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing][the] claims across the line from conceivable to plausible."   *Twombly*, 550 U.S. at 555, 570.   "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense."   *Iqbal*, 556 U.S. at 663–64.

### III.   DISCUSSION

In moving to dismiss the Second Amended Complaint, Defendants principally challenge the sufficiency of Plaintiff's federal claims under 42 U.S.C. § 1983.   Section 1983 provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law.

42 U.S.C. § 1983.   Since the viability of Plaintiff's supervisory liability claim against Ballard depends on the survival of the § 1983 claims against Ramsey and Barbagallo, the Court addresses the merits of their motion first.

### A.   *Ramsey and Barbagallo's Motion to Dismiss*

Ramsey and Barbagallo move for Rule 12(b)(6) dismissal on the following grounds: they allege first, that Plaintiff does not allege a facially plausible claim of excessive force; second, that

5

his state law based tort claims fail on the basis of privilege; and third, that that they are immune from suit under the doctrine of qualified immunity.

###### i.        *Excessive Force under the Eighth Amendment*

"The Supreme Court has extended the application of the Eighth Amendment's prohibition against 'cruel and unusual punishments' to the treatment of prisoners by prison officials." *Hill v. Crum*, 727 F.3d 312, 317 (4th Cir. 2013) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)).  In *Whitley*, the Supreme Court held that "[w]here a prison security measure is undertaken to resolve a disturbance," the question of whether the measure taken inflicted unnecessary pain and suffering in violation of the Eighth Amendment to the Constitution "turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" 475 U.S. at 320–21 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (1973) (internal quotation marks omitted)).

"An inmate's Eighth Amendment claim involves a subjective component and an objective component." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008); *see, e.g.*, *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) ("Determination of whether the Eighth Amendment has been violated requires analysis of subjective and objective components." (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991))).  Specifically, to survive a motion to dismiss, an inmate must allege facts sufficient to establish that "the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams*, 77 F.3d at 761.  "An injury is sufficiently serious for purposes of the objective component of an Eighth Amendment excessive force claim as long as it rises above the level of de minimus harm." *Iko*, 535 F.3d at 238. Significant physical

6

injury is not required.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  *See generally Tedder v. Johnson*, 527 Fed. App'x. 269, 272 (4th Cir. 2013) ("The objective component focuses not on the severity of any injuries inflicted, but rather on 'the nature of the force,' which must be 'nontrivial.'" (quoting *Wilkins v. Gaddy*, 559 U.S. 34 (2010))).   Under the subjective inquiry, the prison official must have acted with "wantonness in the infliction of pain."  *Whitley*, 475 U.S. at 322.   As stated previously, the "'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Iko*, 535 F.3d at 239 (quoting *Hudson*, 503 U.S. at 7).

"Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Whitley*, 475 U.S. at 321–22 (citation and internal quotation marks omitted).   To that end, the *Whitley* Court set forth four non-exhaustive factors to be weighed in determining whether force was applied in a good faith effort to maintain or restore discipline, rather than maliciously and sadistically to cause harm: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response."  *Iko*, 535 F.3d at 239 (citing *Whitley*, 475 U.S. at 321) (internal quotation marks omitted).

Here, Plaintiff has pled facts sufficient to support a finding that the force used against him was "sufficiently serious."   An adverse physical reaction to pepper spray—including eye damage, sinus problems, burning pain, gagging, and choking, as Plaintiff alleges here—is enough to

establish the objective component of an Eighth Amendment claim.   *See Iko*, 535 F.3d at 239 (use of additional bursts of pepper spray after inmate attempted to comply with officer's orders and which possibly contributed to inmate's asphyxiation and death sufficiently alleged objective component of excessive force claim); *Tedder*, 527 Fed. App'x at 274 (finding plaintiff's similar symptomology following administration of pepper spray created genuine issue of material fact on objective component).

The crux of the inquiry, however, is whether Plaintiff has plausibly alleged that the Officers acted with a "sufficiently culpable state of mind" by using pepper spray against him.   *Williams*, 77 F.3d at 761.   Here, too, the challenge to the sufficiency of Plaintiff's pleading fails.   The first *Whitley* factor—the need for the application of force—is essentially dispositive.   The facts as alleged reveal no need for the use of chemical agents against Plaintiff.   Though Plaintiff admits creating a disturbance while the other inmates were being processed for exercise, the Officers seem to gloss over this crucial allegation: that Barbagallo deployed the pepper spray only *after* he had returned with Ramsey from the recreational area and *after* Plaintiff had stopped kicking his cell door.   Any prior justification for the use of force, in other words, was no longer present. Plaintiff's disruptive conduct from that point on was limited to a verbal altercation with Ramsey. As alleged, the Officers' use of pepper spray was nothing more than an impulsive reaction to this verbal provocation.

Ramsey and Barbagallo do not argue—nor reasonably could they—that a prison official may use physical force against an inmate for nothing more than a mere insult.   Rather, they contend that Plaintiff was creating an ongoing disturbance by kicking his cell door contemporaneous with the use of pepper spray.   Their argument in support of dismissal thus

8

depends on the Court's acceptance of the facts as they portray them, specifically, that Plaintiff was creating an ongoing disturbance by kicking his cell door contemporaneous with the use of pepper spray.[3]  Factual disputes are not subject to resolution at this stage of the proceedings.   Plaintiff's facts, as alleged, reveal that he posed no threat to the Officers or to MOCC property when Barbagallo sprayed him.   In such circumstances, the application of force was unwarranted and constitutes a violation of the Eighth Amendment.   *Giron v. Corrections Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999) ("Where no legitimate penological purpose can be inferred from a prison employee's alleged conduct . . . the conduct itself constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.'" (quoting *Whitley*, 475 U.S. at 320–321)); *see Williams*, 77 F.3d at 763 (noting that mace may be constitutionally

---

[3] While they acknowledge the rules of pleading do not prevent a litigant from amending a complaint with allegations contradicting those alleged previously, *see PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007), Ramsey and Barbagallo ask the Court to take into account certain allegations from Plaintiff's prior pleadings in evaluating the sufficiency of his factual allegations.   The Officers point to several facts from Plaintiff's Amended Complaint, for example, to support their argument that the application of pepper spray was contemporaneous with Plaintiff kicking his cell door.   There, Plaintiff alleged that he entered into a verbal altercation with Ramsey while Ramsey and Barbagallo were still processing an adjacent inmate for recreation, and that he kicked his door a "few more times."   (Am. Compl. at ¶ 21–22.)   Still, the Amended Complaint, like its successor, makes clear that Plaintiff "did not kick his cell door . . . when Officer Barbagallo and Sergeant Ramsey returned to the pod a third time after taking the [adjacent] inmate to rec."   (*Id.* ¶ 31.)   It was during this third visit to the pod that Plaintiff alleges these defendants used pepper spray against him.

Ramsey and Barbagallo are also eager to point out that the number of insults Plaintiff is alleged to have uttered against Ramsey has changed.   In the Amended Complaint, Plaintiff alleged that he insulted Ramsey "a couple of times" upon his return to the unit after processing inmates.   (*Id.* ¶ 24.)   Ramsey and Barbagallo consider this an important deviation from the Second Amended Complaint, which states that Plaintiff called Ramsey "a name," (Second Am. Compl. ¶ 22), presumably once.   Even if the Court considers these earlier allegations in considering the present motion to dismiss, the Court does not view them as presenting significant deviations in the factual portrayal of the events at issue.   Perhaps the most important fact—that the Officers used pepper spray against Plaintiff only after they returned from processing the other inmates and after he had ceased to kick his door—remains unchanged through the amendment process.   Further, whether Plaintiff insulted Ramsey once, twice, or three times, the Officers have presented no law to support the conclusion that mere words justify the use of chemical agents on an inmate.

used to maintain order within a prison, such as when necessary to "prevent riots and escapes or to control a recalcitrant inmate" (citation and internal quotation marks omitted)); *Glascoe v. Sowers*, No. ELJ-11-2228, 2013 WL 5330503, at *6 (D. Md. Sept. 20, 2013) ("Eighth Amendment violations have . . . been found when a chemical agent was used without a prior verbal command, or after a prisoner had been subdued or had become compliant with an officer's instructions." (citations omitted)).  *See also Brown v. City of Golden Valley*, 574 F.3d 491, 500 (8th Cir. 2009) ("In pepper spray cases, we have held that a basis for an Eighth Amendment claim exists when, as alleged here, an officer uses pepper spray without warning on an inmate who may have questioned his actions but who otherwise poses no threat." (citation and internal quotation marks omitted)).

Whether Plaintiff's earlier disruptive behavior, including the kicking of his cell door, was sufficiently proximate in time to the deployment of pepper spray to justify the Officers' use of force, is a factual question for resolution at a later time.  Ramsey and Barbagallo's motion to dismiss the excessive force claim is **DENIED**.

> ii.        *State-Law Tort Claims*

Ramsey and Barbagallo move to dismiss the state law tort claims set forth as Counts I and II of the Second Amended Complaint on grounds of privilege.  "In order to be liable for battery, an actor must act with the intention of causing a harmful or offensive contact with a person."  Syl. Pt. 8, *W. Va. Fire & Casualty Co. v. Stanley*, 602 S.E.2d 483 (W. Va. 2004).  "An activity that would otherwise subject a person to liability in tort for assault and battery, however, does not constitute tortious conduct if the actor is privileged to engage in such conduct."  *Hutchinson v. W. Va. State Police*, 731 F. Supp.2d 521, 547 (S.D. W. Va. 2010) (citing *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1231 (5th Cir. 1988)).  West Virginia law, like federal law, presumably permits

the use of a reasonable degree of force by correctional officers against inmates for the purpose of maintaining security or restoring discipline.  *See, e.g.*, *Whitley*, 475 U.S. at 320–21; *Harrah v. Leverette*, 271 S.E.2d 322, 330 (W. Va. 1980) (authorizing the use of physical force as necessary to quell prison riots (citation omitted)).   As explained *supra*, however, Plaintiff has pled a plausible claim of excessive force against Ramsey and Barbagallo.   If the Officers' use of force was excessive, then their conduct was undoubtedly offensive and may preclude a finding of privilege as to Plaintiff's battery claim.   *See, e.g.*, Restatement (Second) of Torts § 10 (Am. Law Inst. 1965); *cf. Pegg v. Klempa*, No. 5:13CV173, 2015 WL 4607696, at *22 (N.D. W. Va. July 31, 2015) (granting summary judgment in favor of the defendants on the plaintiff's battery claim where any "contact was not offensive as the officers did not use excessive force in this action"). The Officers' defense of privilege, at least at this stage, must fail.

This same logic compels the denial of the motion to dismiss Plaintiff's intentional infliction of emotional distress claim.   To prevail on an intentional infliction of emotional distress claim under West Virginia law, a plaintiff must show:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998).   Surely force that is applied "maliciously and sadistically," *Whitley*, 475 U.S. at 320, might also be fairly characterized as "atrocious [and] intolerable," *Travis*, 504 S.E.2d at 425.   Plaintiff has also alleged that Ramsey and Barbagallo's unjustified use of force against him was intentional and that their actions caused

him severe emotional distress in the form of "fear, nightmares, anxiety, embarrassment, humiliation, depression, and loss of personal dignity."   (Second Am. Compl. at ¶¶ 29, 66.) Finally, it can reasonably be said that the fear of being attacked with chemical agents at the whim of a correctional officer could produce emotional distress that no person—including a disagreeable inmate—should be expected to endure.

The Court therefore **DENIES** Ramsey and Barbagallo's motion to dismiss Counts I and II.

*iii.*        *Qualified Immunity*

The defense of "[q]ualified immunity shields a government official from liability for civil monetary damages if the officer's 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Qualified immunity is more than immunity from liability; it is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).   Courts use a two-step analysis to resolve the qualified immunity claims of government officials.   *See Saucier v. Katz*, 533 U.S. 194, 195 (2001).   First, a court must decide whether the plaintiff has alleged facts that show a violation of a constitutional right.   *Id.* at 201.   Second, a court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* Ultimately, the task is to "balance[e] two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "A government official asserting a qualified immunity

defense bears the burden of proof and persuasion." *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003).

Plaintiff has alleged facts demonstrating that Ramsey and Barbagallo violated his Eighth Amendment rights by using pepper spray against him in circumstances where no force was necessary.   Accepting these facts at true, which the Court must on a motion to dismiss, Plaintiff has taken the first step in overcoming the qualified immunity defense.   *Saucier*, 533 U.S. at 201.

At the second step, Plaintiff must sufficiently allege that the Eighth Amendment right was "clearly established" in the specific context of this case at the time of the purported incident.   *Id.* As previously discussed, the Fourth Circuit has held time and again that "it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain."   *Iko*, 535 F.3d at 240 (quoting *Williams*, 77 F.3d at 763); *see Boone v. Stallings*, 583 Fed. App'x. 174, 176 (4th Cir. 2014) ("Our precedent establishes that the use of pepper spray on a docile prisoner could qualify as excessive force."); *Tedder*, 527 Fed. App'x. at 273 (use of pepper spray against an unresisting inmate created a genuine issue of material fact on excessive force claim).[4]

---

[4] This precedent aside, Plaintiff also alleges that the Officers' conduct violated MOCC's own policy directives.   Policy Directive 312.02 of the West Virginia Division of Corrections, which Plaintiff attaches as an exhibit to the Second Amended Complaint, provides that "[a]n inmate's dialogue that offers the threat of possible resistance to an officer's commands is not normally considered resistance until the inmate physically resists control."   (Second Am. Compl. Ex. F-2, ECF No. 52 at 24.)   This policy directive also sets forth guidelines for the appropriate use of physical, non-lethal force, by prison personnel.   As this Court has recognized:

> Policy Directive 312.02 provides the following five "levels of control" in response to resistance by an inmate: (1) "[o]fficer [p]resence;" (2) "[v]erbal [d]irection;" (3) "[i]ntermediate [c]ontrol [t]actics [s]oft;" (4) "[i]ntermediate [c]ontrol [t]actics [h]ard;" and (5) "[u]se of [d]eadly [f]orce." (*Id.* at 5–8.) A correctional officer's use of their "personally carried chemical agent" is an intermediate control tactics soft level of control. (*Id.* at 6.) "Intermediate [c]ontrol [t]actics [s]oft is a level of control used for any level of

13

Plaintiff alleges that he was isolated in his cell and posed no physical threat to the safety of the Officers, other inmates, or MOCC property at the time of the relevant incident, and that Barbagallo deployed pepper spray through his food slot, without warning, in retaliation for an insulting comment.   That such conduct violates an inmate's constitutional rights under the Eighth Amendment was clearly established at the time of the incident described in the Second Amended Complaint.   As alleged, Ramsey and Barbagallo's use of pepper spray—or complicity in its use— could constitute excessive force under clearly established law at the time of the incident.   As such, the Court cannot at this juncture find that Ramsey and Barbagallo are entitled to qualified immunity on the § 1983 claim.

The Court is mindful that qualified immunity is intended to relieve defendants not just from liability, but also from the burden of defending themselves in a meritless lawsuit. The merits of this lawsuit, of which the Court expresses no view, will be tested another day.   Based on the allegations set forth in the Second Amended Complaint, the Officers' claim to qualified immunity must be and is **DENIED**.

### B.   *Defendant Ballard's Motion to Dismiss*

Defendant Ballard, the Warden of MOCC, is named in the Second Amended Complaint in both his official and individual capacity.   Ballard moves to dismiss that pleading on the following grounds: (1) allegations premised on a theory of *respondeat superior* or brought against a

---

resistance by an inmate when lower levels of control have failed or been deemed unsafe to attempt." (*Id.*)

*Harper v. Blagg*, No. 2:13-CV-19796, 2015 WL 6509131, at *9 (S.D.W. Va. Oct. 28, 2015). "[C]ompliance with . . . policy directives may in certain circumstances be instructive on whether defendants acted in good faith and whether they are entitled to qualified immunity."   *Id.* at *8 (quoting *Harper v. McCloud*, No. 2:12–cv–00656, 2014 WL 1159129, at *21 (S.D. W. Va. Mar. 21, 2014)).

governmental official in his official capacity are not cognizable under § 1983; (2) Plaintiff fails to state a claim of supervisory liability against Ballard, (3) Plaintiff's facts are insufficient to show a plausible Fourteenth Amendment violation, (4) Ballard's conduct is protected by qualified immunity, and (5) Article III, Sections 3, 5, and 10 of the West Virginia Constitution do not create a cause of action in these circumstances.

i.      *Official Capacity Claims against Ballard*

Ballard asserts that Plaintiff has impermissibly attempted to sue him in his official capacity, and that such allegations must be disregarded for purposes of determining whether the Plaintiff has stated a claim upon which relief can be granted.  Ballard makes the same argument with respect to allegations he believes are premised upon *respondeat superior*, a theory which cannot impart liability to a supervisory official under § 1983.  On this latter point, Plaintiff is in agreement.  *See Iqbal*, 556 U.S. at 676 ("[G]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").  He responds that his allegations against Ballard are based upon supervisory liability, not *respondeat superior*.  The Court considers supervisory liability below; here, it turns to Ballard's motion to dismiss the claims asserted against him in his official capacity.

In order to state a claim for damages under 42 U.S.C. § 1983, an aggrieved party must officially allege that he was injured by "the deprivation of any rights, privileges, or immunity secured by the constitution and laws" by a "person" acting under color of state law.  *See Monell v. Dep't of Social Serv.*, 436 U.S. 658, 691 (1978).  In *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), the Supreme Court stated:

> Obviously, state officials literally are persons. But a suit against a state official in
> his or her official capacity is not a suit against the official but rather is a suit against

15

the official's office.   As such, it is no different from a suit against the State itself.
We hold that neither a State nor its officials acting in their official capacities are
"persons" under § 1983.

*Id.* at 71.

Plaintiff's claims seeking monetary damages against Ballard in his official capacity must

be dismissed.   Section 1983 suits against a state official in his official capacity for money damages

are, in effect, suits against the official's office and are barred by the Eleventh Amendment.   *Quern*

*v. Jordan*, 440 U.S. 332, 337 (1979).   Under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908),

however, the Eleventh Amendment does not bar prospective non-monetary relief against a state

official in his official capacity to prevent ongoing violations of federal law.   *Id.* at 159–60.

Consequently, while a state official sued in his official capacity for monetary relief is not a

"person" subject to suit under § 1983, *Will*, 491 U.S. at 71, that same official sued in his official

capacity for prospective injunctive or declaratory relief is subject to suit, *Lynn v. West*, 134 F.3d

582, 587–88 (4th Cir. 1998).   The Court therefore **GRANTS** the motion to dismiss to the extent

Plaintiff seeks monetary damages against Ballard in his official capacity.   Plaintiff states a claim

for declaratory or injunctive relief from Ballard in his official capacity under *Ex parte Young*.

    ii.       *Supervisory Liability under the Eighth and Fourteenth Amendments*

Ballard further asserts that the Second Amended Complaint fails to state a claim upon

which relief can be granted because Plaintiff has not sufficiently alleged facts to support a claim

of supervisory liability under § 1983.   Plaintiff does not allege that Ballard was present at or

otherwise directly involved in the pepper spray incident.   Rather, the Second Amended Complaint

alleges that Ballard facilitated the violation of Plaintiff's constitutional rights by instituting policies

16

that do not require correctional officers to temper the severity of force used against uncooperative inmates.

Ballard also moves to dismiss Plaintiff's § 1983 claim to the extent premised on a Fourteenth Amendment due process violation.   Ballard alleges that inmates have, at best, a limited liberty interest while incarcerated, and that furthermore, Plaintiff's has not alleged facts to support a conclusion that Ballard's conduct "shocks the conscience."   The Court will consider both arguments in turn.

1.     *Eighth Amendment Violation*

"Supervisors are often one step or more removed from the actual conduct of their subordinates; therefore, the law requires more than an attenuated connection between the injury and the supervisor's alleged wrongful conduct."   *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016).   In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Fourth Circuit held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved, prior constitutional violations.   Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care."   *Id.* at 798 (quoting *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).   In *Shaw*, the Fourth Circuit discussed the following elements necessary to establish a supervisor's liability under § 1983:

> 1) The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;

17

2) The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and

3) There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

*Id.* at 799; *see also Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010) (finding a plaintiff may succeed in a supervisory liability claim under § 1983 by demonstrating (1) that the defendant promulgated, created, implemented, or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation).

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court clarified that a prison official's "actual subjective awareness" of an excessive risk of harm or safety was required to hold the official liable under the Eighth Amendment. *Id.* at 837–38. Thus, a prison official cannot be held liable for the failure to alleviate a risk that he should have perceived, but did not in fact perceive. *Id.* at 838.

Ballard asserts that Plaintiff's allegations are deficient as they relate to each of the *Shaw* elements. He argues first, that Plaintiff cannot demonstrate that he, Ballard, had actual, subjective knowledge that Ramsey and Barbagallo were engaged in conduct that posed an excessive risk of harm to Plaintiff; second, that Plaintiff's allegations are insufficient to demonstrate Ballard's "continued inaction in the face of documented widespread abuses," *Shaw*, 13 F.3d at 799 (citation omitted); and third, that Plaintiff has not causally linked Ballard's alleged inaction with any constitutional deprivation he suffered at the Officers' hands.

Plaintiff has plainly taken pains in drafting the detailed allegations that constitute his supervisory liability claim. In support thereof, the Second Amended Complaint attaches four

18

documents intended to reflect Ballard's actual knowledge of the pervasive and unjustified use of force against inmates at MOCC.[5]   The first is an August 18, 2012 excessive force grievance filed by MOCC inmate Casey Rygh after a correctional officer deployed pepper spray and a stinger grenade into his cell and placed him in restraint chair for eight hours for refusing to return his food tray.   Rygh's Unit Manager denied the grievance, stating, *inter alia*, "efforts to temper are not needed or required."   (Second Am. Compl. at ¶ 32.)   Notably, Ballard upheld the denial of the grievance, writing that the inmate "should have complied with the order to return [his] food tray" and that "the captain [was] correct in his response."   (*Id.*)   Plaintiff also supplies an August 26, 2013 inmate request form in which MOCC inmate Roger Smith inquires, "I was told by an officer that [Quilliams] 2 Unit of MOCC was under Martial Law.   Is this true?"   (Second Am. Compl. Ex. D.)   The form records the lieutenant's response on September 9, 2013, that "per Warden, Martial Law is a condition that MOCC utilizes."   (*Id.*)   Finally, Plaintiff submits an email from MOCC Lieutenant Robert E. Rhodes addressed to various prison administrators and staff, including Ballard, and advising that officers "do not have to give efforts to temper to those locked up in our Seg units."   (Second Am. Compl. Ex. E.)

These three documents—inmate Rygh's grievance form, Smith's inmate request form, and Lieutenant Rhodes' email—appear to have achieved wide distribution among MOCC inmates.   In fact, in *Lowe v. Matheny*, a § 1983 suit originating from a MOCC inmate's allegation of excessive force, Judge Joseph R. Goodwin of this District found that these very same documents gave rise

---

[5] While content outside a pleading generally may not be considered on a motion to dismiss, a court may consider the factual allegations in the complaint and any exhibits attached thereto that are both authentic and integral to the complaint.   *See Blakenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006).

to a plausible claim of deliberate indifference against Ballard when appended to and incorporated in the inmate's pleading.   2:13-cv-22416, 2015 WL 5795867 (S.D. W. Va. Sept. 30, 2015).   The Court finds *Lowe* persuasive.   These documents create a reasonable inference that Ballard had actual knowledge of his subordinates' continued use of force against MOCC inmates on the Quilliams Two Unit without efforts to mitigate or temper.   His knowledge can be inferred, in part, from the routine imposition of martial law on the Quilliams Unit, which Plaintiff alleges leads to rampant violations of inmate constitutional rights.   (Second Am. Compl. Ex. D.)    Rygh's grievance form also demonstrates that Ballard personally ratified the use of force against Quilliams inmates without prior efforts to temper.   While Ballard attempts to minimize the significance of this document by claiming that the circumstances of Rygh's confinement differed from Plaintiff's, the two matters appear to share important factual similarities.   At this early stage of the litigation, the Court finds that Ballard's ratification of the use of force in Rygh's case is relevant proof of his state of mind in the instant case.

Plaintiff has also alleged, as to *Shaw*'s second element, that Ballard was deliberately indifferent to his subordinates' "documented widespread abuses."   *Shaw*, 13 F.3d at 799.   By demonstrating that Ballard personally ratified the offensive practices of his correctional officers and was credited with the directive to impose martial law, it can reasonably be said that Ballard— the chief administrator of MOCC—possessed responsibility for the continued operation of these policies.   *Dodds*, 614 F.3d at 1199 (finding that § 1983 allows for the imposition of liability on a supervisor who "creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy" that results in the deprivation of rights secured by the Constitution).   From these allegations, it follows that Ballard's continued inaction in the face of

20

constitutional abuses caused Ramsey and Barbagallo to feel empowered to deploy pepper spray into an inmate's cell with no more provocation than the inmate's insult—which, of course, is what Plaintiff alleges here. *See id.* at 1211 ("[T]he requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." (citation omitted)).

Plaintiff's allegations of excessive force, together with the three incriminating documents attached to his pleading, establish specific facts giving rise to an inference that Ballard's conduct violated Plaintiff's Eighth Amendment rights. The motion to dismiss on that basis is **DENIED**.

### 2. *Fourteenth Amendment Violation*

The Due Process Clause of the Fourteenth Amendment encompasses three types of claims enforceable under § 1983: (1) claims for violations of rights enshrined in the Bill of Rights and incorporated against the states, (2) claims under the substantive component of the Due Process Clause, which "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them,'" and (3) claims under the procedural component of the Due Process clause, which contains a guarantee of fair procedure. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Arbitrary state action gives rise to a substantive due process claim only when the action "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998). The Second Amended Complaint, while non-specific, appears to allege a substantive due process claim against Ballard.

In the context of allegations of excessive force brought by prison inmates against correctional officers, "the Due Process Clause affords [inmates] no greater protection than does the Cruel and Unusual Punishments Clause." *Whitley*, 475 U.S. at 327. Furthermore, the

Supreme Court has expanded the concept of substantive due process in this context with reluctance. *County of Sacramento*, 523 U.S. at 841. To that end, the Supreme Court has held that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). In *Graham*, the Supreme Court held that where an explicit textual source of constitutional protection applies to physically intrusive government conduct, "that Amendment, not the more generalized notion of 'substantive due process,'" must be the guidepost for analyzing the claim. 490 U.S. at 395.

Under the guidance of *Graham*, the Court will not engage in a separate substantive due process analysis where Plaintiff has alleged a plausible Eighth Amendment claim arising from the same abusive government conduct. *See Krein v. W. Va. State Police*, No. 2:11-cv-00962, 2012 WL 2470015, at *6 (S.D. W. Va. Jun. 27, 2012) (dismissing Fourteenth Amendment claim because "the textually specific Fourth Amendment protection preempts the more generalized substantive due process protection"); *see also Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (turning to an analysis of substantive due process in consideration of an excessive force claim only after finding that the Fourth and Eighth Amendments did not apply); *Love v. Salinas*, No. 2:11-cv-00361-MCE-CKD, 2013 WL 4012748, at *7 n. 5 (E.D. Ca. Aug. 6, 2013) ("Because Plaintiff's 'failure to protect' claim is based on the Eighth Amendment, no separate discussion of Plaintiff's substantive due process claim . . . is necessary."); *Brothers v. Lawrence County Prison Board*, No. 06-1285, 2008 WL 146828, at *12 (W.D. Pa. Jan. 14, 2008) (finding an inmate did not state a cause of action for substantive due process where alternative constitutional amendments

22

covered the conduct giving rise to his alleged violations).   This finding is as equally applicable to Defendants Ramsey and Barbagallo as it is to Ballard, since their conduct is similarly subsumed by the Eighth Amendment claim.   Plaintiff's Fourteenth Amendment claim arising from the same facts and circumstances is legally insufficient and will be dismissed.

       *iii.*       *Qualified Immunity*

Ballard next seeks the protections of qualified immunity on Plaintiff's supervisory liability claim.   As has been discussed, government officials enjoy qualified immunity in their performance of discretionary functions so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.   When a supervisor seeks qualified immunity in a § 1983 action, the plaintiff must demonstrate:

> (1) it was 'clearly established' at the time of [the subordinate's] conduct that [the supervisor] could be held liable under § 1983 for constitutional violations committed by [the subordinate]; (2) it was 'clearly established' at the time [the supervisor] was supervising [the subordinate] that the degree of force that [the supervisor] knew that [the subordinate] was using against arrestees was unconstitutional; (3) a reasonable person in [the supervisor's] position would have known that his actions were unlawful.

*Shaw*, 13 F.3d at 801.   The test can be described as two-pronged, with *Shaw*'s first and second elements designated as the "clearly established" prong and the third as the "reasonableness" prong. *See Camilo-Robles v. Hoyos*, 151 F.3d 1, 6 (1st Cir. 1998) (finding the "'clearly established' prong of the qualified immunity inquiry is satisfied when (1) the subordinate's actions violated a clearly established constitutional right, and (2) it was clearly established that a supervisor would be liable for constitutional violations perpetrated by his subordinates in that context").   Here, both "clearly established" elements are satisfied.   Accepting Plaintiff's version of the facts and reasonable

inferences drawn from them, the Court has already found that Plaintiff alleged violations of a clearly established right by Defendants Ramsey and Barbagallo.   It is also well-settled that a deliberately indifferent supervisor may be held liable for the constitutional violations of his subordinates.   *Shaw*, 13 F.3d at 799.

The inquiry can be distilled, then, to an assessment of whether Ballard's conduct was objectively reasonable. *Camilo-Robles*, 151 F.3d at 7 ("Because the constitutional rights and supervisory liability doctrine that underlie [the plaintiff's] claim are clearly established, the qualified immunity analysis here turns on whether, in the particular circumstances . . . , that [supervisor] should reasonably have understood that his conduct jeopardized these rights." (citation omitted)); *see also Shaw*, 13 F.3d at 801.   Here, the qualified immunity analysis can often be collapsed with the underlying merits analysis.   *See Dodds*, 614 F.3d 1185, 1193–94 ("Because a plaintiff can neither recover under § 1983 from a government official nor overcome the official's assertion of qualified immunity without demonstrating that official violated his constitutional or statutory rights, the legal analysis required to surmount these separate obstacles is often related, if not identical.").   Plaintiff has alleged that Ballard not only knew of the use of force by his correctional officers against inmates without making efforts to temper, but that he continued to promulgate, or at least endorse, policies allowing this conduct to continue unchecked.   *See Dodds*, 614 F.3d at 1199–1200.   Assuming the truth of Plaintiff's allegations, no reasonable official in Ballard's position would have considered his actions to be lawful.   Whether Plaintiff can prove these allegations is a question for another day.

iv.        *Claims under Article III of the West Virginia Constitution*

24

Lastly, Ballard asserts that Plaintiff's claims under Article III, Sections 1, 5, and 10 of the West Virginia Constitution are non-actionable, for a variety of reasons.   As to Sections 1 and 5, Ballard argues that "there is no recognized cause of action based upon violations of [those] State [c]onstitutional rights."   (ECF No. 65 at 17.)   While he concedes that Section 10 may give rise to a cause of action, he argues that here the claim is barred by qualified immunity.

Plaintiff's state constitutional claims are, like his federal constitutional claims, predicated upon excessive force.   State constitutional rights are not enforceable under § 1983.   *See West v. Atkins*, 487 U.S. 42, 48 (1988) (to state a claim under § 1983, a plaintiff must allege, *inter alia,* the violation of a right secured by the Constitution and laws of the United States).   Because Plaintiff appears to bring each of his State constitutional claims under § 1983, they are legally insufficient on that basis alone.   Nevertheless, the Court will generously construe the Second Amended Complaint as alleging stand-alone violations of the West Virginia Constitution and will evaluate the sufficiency of those claims as if they were so alleged.

The Supreme Court of Appeals of West Virginia has held that the remedies available to "[a] person brutalized by state agents while in jail or prison" are:

> (a) A reduction in the extent of his confinement or his time of confinement;
>
> (b) Injunctive relief, and subsequent enforcement by contempt proceedings including but not limited to, prohibiting the use of physical force as punishment, requiring psychological testing of guards, and ordering guards discharged if at a hearing they are proved to have abused inmates;
>
> (c) A federal cause of action authorized by 42 U.S.C. § 1983; and
>
> (d) A civil action in tort.

Syl. Pt. 4, *Harrah*, 271 S.E.2d at 324.   Interpreting *Harrah*, this Court has held, on several occasions, that claims for money damages are not independently available to remedy violations of

Article III of the West Virginia Constitution.   *See Howard v. Ballard*, No. 2:13–cv–11006, 2015 WL 1481836, at *4 (S.D. W. Va. Mar. 31, 2015); *McMillion-Tolliver v. Kowalski*, No. 2:13-CV-29533, 2014 WL 1329790, at *2 (S.D.W. Va. Apr. 1, 2014) ("The *Harrah* court did not include a cause of action under the state constitution for money damages among the remedies it listed. Without an independent statute authorizing money damages for violations of the West Virginia Constitution, the plaintiff's claim must fail."); *Smoot v. Green*, No. 2:13–10148, 2013 WL 5918753, at *4–5 (S.D. W. Va. Nov. 1, 2013) ("Inasmuch as the decision in *Harrah* does not contemplate a damages award for Article III violations in this setting, it is ORDERED that, to the extent the claims under Article III seek monetary relief, they be, and hereby are, dismissed.").

To the Court's knowledge, the Supreme Court of Appeals of West Virginia has never ruled on the issue, and its decision in *Hutchinson v. City of Huntington*, 479 S.E.2d 649 (W. Va. 1996), only serves to muddy the waters.   In *Hutchinson*, the West Virginia high court held that "[u]nless barred by [a recognized immunity], a private cause of action exists where a municipality or local government unit causes injury by denying that person rights that are protected by the Due Process Clause embodied within Article 3, § 10 of the West Virginia Constitution."   *Id.* at 654.   Ballard suggests that under *Hutchinson*, the only private right of action available under the West Virginia Constitution stems from Article III, § 10.   Plaintiff responds that although *Hutchinson* explicitly recognized a cause of action under Section 10, it did not do so to the exclusion of all other state constitutional provisions.   Indeed, at least one West Virginia district court has suggested that *Hutchinson* generally "recognizes a private right of action for violations of the West Virginia Constitution."   *Ray v. Cutlip*, No. 2:13–CV–75, 2014 WL 858736, at *3 n.1 (N.D. W. Va. Mar. 5, 2014) ("West Virginia recognizes a private right of action for violations of the West Virginia

26

Constitution."); *see also Wood v. Harshbarger*, 2013 WL 5603243, at *6 (S.D. W. Va. Oct. 3, 2013) (finding plaintiff had alleged sufficient facts to state a claim under Article III, Section 5 of the West Virginia Constitution and reserving the question of whether monetary damages were an available remedy for another day).

The Court is unconvinced that the Supreme Court of Appeals of West Virginia would refuse to recognize a private right of action under Section 5 of Article III when it has recognized such a right with regard to Section 10.   Given the unsettled state of the law, and noting that Ballard does not otherwise challenge the legal sufficiency of Plaintiff's Article III, Section 5 claim,[6] the Court **DENIES** the motion to dismiss.   *See Wood*, 2013 WL 5603243, at *6 n. 18 (S.D. W. Va. Oct. 11, 2013) (denying motion to dismiss factually sufficient Article III, Section 5 claim despite lingering questions concerning the availability of money damages).   **The parties are hereby put on notice, however, that the Court intends to certify the question to the West Virginia Supreme Court if Plaintiff continues to proceed against Defendants under this theory of liability.**

Plaintiff's claims under Sections 1 and 10 are deficient for independent reasons.   Section 1, entitled "Bill of Rights," "is a statement of the 'basic principle on which our entire democratic structure is founded,' and has not been applied in circumstances such as these."[7]   *Krein*, 2012 WL

---

[6] Apart from noting the limitation on recovery of monetary damages, Ballard does not argue that Plaintiff pleads insufficient factual content to state a plausible claim for cruel and unusual punishment under Article III, Section 5.   *See Harrah*, 271 S.E.2d at 330–31 ("Article III, [Section] 5 of the West Virginia Constitution, prohibits state prison administrators and correctional officers from using physical force on inmates, absent imminent and present danger of harm to others, themselves or state property . . . inflicting physical force absent an existing riot, is cruel and unusual punishment.").

[7] Section 1 functions as a preface to Article III.   It reads, in its entirety:

2470015, at *6 (quoting *Allen v. State Human Rights Comm'n.*, 324 S.E.2d 99, 109 (W. Va. 1984)). Plaintiff has presented no authority for the assertion that Article III, Section 1 gives rise to a private right of action.   Section 10, West Virginia's equivalent to the federal Due Process Clause, is similarly inapplicable because, as explained in consideration of Plaintiff's Fourteenth Amendment claim, *supra* Section II.B.ii.2, "claims of excessive force are more appropriately analyzed under the more textually specific [Eighth Amendment] than the more generalized due process clause." *Krein*, 2012 WL 2470015, at *6 (declining to address Article III, Section 10 claim premised on conduct giving rise to claim for excessive force).   As such, Plaintiff's Section 1 and 10 claims cannot survive Ballard's Motion to Dismiss.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants Ramsey and Barbagallo's Motion to Dismiss (ECF No. 62) and **DENIES IN PART** and **GRANTS IN PART** Defendant David Ballard's Motion to Dismiss, (ECF No. 64).   The Court hereby **ORDERS** that Plaintiff's § 1983 claim arising under the Fourteenth Amendment and Plaintiff's claims under West Virginia Constitution Article III, Sections 1 and 10 are **DISMISSED** as to all Defendants.

---

All men are, by nature, equally free and independent, and have certain inherent rights, of which, when they enter into a state of society, they cannot, by any compact, deprive or divest their posterity, namely: The enjoyment of life and liberty, with the means of acquiring and possessing property, and of pursuing and obtaining happiness and safety.

W. Va. Const. art. III, § 1.   The rights to which Section 1 refers are preserved in and affirmatively safeguarded by Article III's subsequent provisions.   *See id.* § 5 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."); *id.* § 10 ("No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers.")   Thus, it would appear that Section 1 does not independently give rise to a cause of action, and the Court has located no case suggesting that it does.

28

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      September 27, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE